ACHIEVERS INVESTMENTS, INC., Appellant,

v.

S. Steven KARALEKAS and John A. McCahill, Appellees.

Republic of South Africa, Intervenor.

No. 95-CV-44.

District of Columbia Court of Appeals.

Argued Nov. 6, 1995.

Decided April 29, 1996.

Tracy Barger, Washington, DC, with whom Edward L. Weidenfeld, was on the brief, for appellant.

Robert W. Hesselbacher, Jr., Baltimore, MD, for appellees.

Philip J. Hare, Rockville, MD, for intervenor.

Before STEADMAN, RUIZ and REID, Associate Judges.

STEADMAN, Associate Judge:

Achievers Investments, Inc. ("Achievers") appeals the trial court's grant of summary judgment to appellees S. Steven Karalekas and John A. McCahill. The trial court held that Achievers could not sue in the District of Columbia courts because Achievers was an "arm or instrumentality" of an unrecognized foreign government. Because the trial court did not fully take into account a change in the government that allegedly controlled Achievers, we vacate the trial court's order[1] and remand for further proceedings.

## I.

For purposes of this appeal, the following facts may be deemed not in dispute. An entity claiming status as an independent state, the Republic of Bophuthatswana ("ROB"), was a South African homeland not recognized by the United States.[2] Appellees

1. The trial court granted the defendants' motion for summary judgment and dismissed the complaint with prejudice.

2. By letter of March 4, 1993, the Acting Legal Advisor of the Department of State advised appellant's attorney that "the U.S. Government has

never recognized Bophuthatswana as an independent state but instead considers it an integral part of South Africa." *See* International Security and Development Act of 1985, P.L. 99-83, § 803(b)(2), 99 Stat. 190, 260-61 (United States will consider as citizens of South Africa all persons born within recognized boundaries of the

Karalekas and McCahill provided legal and consulting services to ROB in connection with a purchase of real estate in the District of Columbia. In October 1992 ROB filed suit against Karalekas and McCahill in the United States District Court for the District of Columbia. ROB's complaint alleged breach of fiduciary duty, fraudulent misrepresentation, negligence, breach of contract, and civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Karalekas and McCahill moved to dismiss ROB's complaint on the ground that permitting an unrecognized foreign government to sue in a United States court was contrary to public policy and settled law. ROB sought support for the suit from the Department of State, which declined to intervene on ROB's behalf.[3]

On March 31, 1993, Achievers was incorporated in the District of Columbia. Three ROB government officials served as Achievers's directors and as its president, vice president, and treasurer. Achievers's sole shareholder was Achievers Investments (Pty.), Ltd., a Bophuthatswana corporation, which was in turn a subsidiary of the Bophuthatswana National Development Corporation ("BNDC"). BNDC managed investments for, was financed by, and paid its profits to the government of ROB.

ROB voluntarily dismissed its federal district court suit against Karalekas and McCahill on April 14, 1993. The next day, ROB executed a written assignment of its claims against the defendants to Achievers. The consideration for the assignment was $100 and a promise by Achievers to pursue ROB's claims.

Achievers filed the instant action against Karalekas and McCahill in Superior Court on April 30, 1993. On May 21, 1993, Karalekas and McCahill moved to dismiss Achievers's complaint on the ground that Achievers was an "arm or instrumentality" of an unrecognized government, ROB, and thus should be denied access to courts in the United States. By order filed on August 16, 1993, the trial court denied the motion because the defendants had not presented evidence that ROB controlled Achievers.

On April 27, 1994, ROB was formally reincorporated into the Republic of South Africa ("South Africa"). The parties do not dispute that ROB has ceased to exist.

After discovery was completed in July 1994, both parties moved for summary judgment. As in their motion to dismiss, Karalekas and McCahill argued that Achievers lacked capacity to sue because it was an instrumentality of an unrecognized government. The defendants supported their motion with evidence regarding the creation and structure of Achievers, as set forth above, which the defendants had obtained through discovery. Achievers countered that ROB had been reincorporated into South Africa. The trial court held that Achievers was an arm or instrumentality of ROB, an unrecognized foreign government, and therefore was not entitled to sue in courts of the United States. With respect to the reincorporation, the trial court said that in the absence of any controlling authority, it was reluctant to find that a suit improper at its conception could become proper through a later serendipitous course of events over which the plaintiff had no control.[4] Accordingly, on December 12, 1994, the trial court granted summary judgment to the defendants. Achievers filed a

---

Republic of South Africa, and will not differentiate among South African citizens on the basis of the purported grant of independence to "homelands").

**3.** The letter from the Acting Legal Advisor, dated March 4, 1993, see note 2 *supra*, stated: "[T]he Department of State does not normally intervene or otherwise involve itself in private civil litigation and, after receiving your letter and the pleadings enclosed with it, we see no reason for a contrary approach in this instance."

**4.** The court said further that its "concept of equity would be askew should the Plaintiff now be permitted to benefit from its own attempts to circumvent the laws of this country and maintain an action which its nonrecognition prohibited." The court also noted: "[T]his is not a case in which the Republic of South Africa is a party or has sought leave to join the law suit. Furthermore, even though the Republic of South Africa is recognized by the United States, there is no evidence in the record that the State Department has changed its position with regard to the claim at issue herein."

timely appeal to this court. We granted South Africa's motion to intervene in the appeal.

## II.

### A.

■ The parties do not dispute the settled doctrine that an unrecognized foreign government may not sue in domestic courts.[5] *See, e.g., Pfizer, Inc. v. Government of India*, 434 U.S. 308, 319–20, 98 S.Ct. 584, 591–92, 54 L.Ed.2d 563 (1978). Further, it has been held that an "arm or instrumentality" of an unrecognized government likewise lacks capacity to sue. *Federal Republic of Germany v. Elicofon*, 358 F.Supp. 747, 757 (E.D.N.Y. 1970), *aff'd, Kunstsammlungen zu Weimar v. Elicofon*, 478 F.2d 231 (2d Cir.1973), *cert. denied*, 415 U.S. 931, 94 S.Ct. 1443, 39 L.Ed.2d 489 (1974), *cited with approval in First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 633, 103 S.Ct. 2591, 2603, 77 L.Ed.2d 46 (1983). They differ, however, as to whether the reincorporation of ROB into South Africa moots the nonrecognition issue in this case.[6]

■ In deciding this question we basically must determine whether a party who lacks capacity to sue at the commencement of an action may maintain the action if the defect is subsequently cured. The trial court grounded its grant of summary judgment on its conclusion that Achievers was an arm or instrumentality of an unrecognized government,[7] and that the reincorporation of ROB into South Africa could not cure Achievers's initial lack of capacity to sue. Our law, however, suggests a contrary result. In a somewhat analogous situation, we have permitted a plaintiff who initially lacked capacity to sue to maintain the original action when the impediment was removed. In *Duckett v. District of Columbia*, 654 A.2d 1288 (D.C.1995), the plaintiff alleged that the District provided negligent medical care to her son, causing his death. *Id.* at 1289. Our wrongful death act permits suit only by the personal representative of the deceased. D.C.Code § 16–2702 (1989 Repl.). At the time Duckett filed suit she had not yet been named personal representative of the deceased and therefore sued in her individual capacity. *Duckett, supra*, 654 A.2d at 1289. The trial court granted the District's motion to dismiss for lack of standing, despite counsel's representation that the plaintiff would soon be appointed personal representative. We reversed, holding that the trial court should have given the plaintiff a reasonable opportunity to substitute herself as personal representative as the real party in interest pursuant to Super. Ct. Civ. R. 17(a).[8] *Id.* at 1291.

---

5. Because throughout the parties have dealt with the issue as a question of an unrecognized government, rather than an unrecognized nation-state, we shall proceed likewise and need not address any possible analytical distinction between the two with respect to the right to sue.

6. We assume for purposes of this discussion that Achievers was in fact an arm or instrumentality of ROB, and that ROB's rights to Achievers transferred to South Africa in the reincorporation, as South Africa asserts before us. With respect to the latter point, nothing in the record suggests that, to the extent that Achievers was an arm or instrumentality of ROB, ROB's interest has not become the interest of South Africa. *See Guaranty Trust Co. v. United States*, 304 U.S. 126, 137, 58 S.Ct. 785, 791, 82 L.Ed. 1224 (1938) ("the rights of a sovereign state are vested in the state rather than in any particular government that purports to represent it"); *Land Oberoesterreich v. Gude*, 109 F.2d 635, 637 (2d Cir.1940) ("the right of action belonging to one sovereign will pass to its successor, if the successor has come to power in a manner [acceptable to the government of the United States]"), *cert. denied,*

311 U.S. 670, 61 S.Ct. 30, 85 L.Ed. 431 (1940). Neither does the record affirmatively show, however, that South Africa succeeded to ROB's interest in Achievers. Appellees, as the parties moving for summary judgment, bear the burden of demonstrating the absence of a material factual dispute. *See Cellular Radio Corp. v. OKI America*, 664 A.2d 357, 359 (D.C.1995). At the very least, the question of succession would be a disputed issue precluding summary judgment.

7. Appellants argued in opposition to the defendants' motion for summary judgment that (1) the nonrecognition issue became moot when ROB was reincorporated into South Africa; (2) even if not moot, the nonrecognition doctrine does not apply to domestic corporations; and (3) defendants had not shown that Achievers was an instrumentality of a foreign government rather than a domestic corporation. We do not reach the latter two issues.

8. That rule reads, in pertinent part:

No action shall be dismissed on the ground that it is not prosecuted in the name of the real

We have also held that when a plaintiff amends a complaint solely to cure a defect in capacity to sue, the amendment relates back to the filing of the original complaint under Super. Ct. Civ. R. 15(c). In *Strother v. District of Columbia*, 372 A.2d 1291 (D.C. 1977), the plaintiff had filed suit under the wrongful death act "individually and on behalf of the Estate of [plaintiff's father], deceased." *Id.* at 1294. The plaintiff was named personal representative after the statute of limitations had run on the claim. *Id.* The trial court denied leave to amend the complaint to allege the change in the plaintiff's status, believing that the amended complaint would have to be dismissed on statute of limitations grounds. *Id.* We remanded to permit the plaintiff to amend his complaint. *Id.* at 1297.

In light of these analogous precedents, we perceive no reason for holding that an instrumentality of an unrecognized government that sues in our courts should not be permitted to maintain the action once a recognized government acquires control over the plaintiff organization and the underlying cause of action.[9] By reincorporation of ROB into South Africa, the posture of the case vis-a-vis the involvement of a foreign government became that which always was the official State Department position; viz., that ROB was not an independent state but instead was an integral part of South Africa.[10] Once the unrecognized government dropped from the picture in favor of a recognized government, the policy concern that underlies the prohibition against suits by unrecognized governments was no longer an issue. Permitting an instrumentality of a recognized government to litigate in domestic courts risks no judicial infringement upon the executive branch's prerogative to make foreign policy, just as denying a forum to unrecognized govern-

> party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.
>
> Super. Ct. Civ. R. 17(a).

9. See note 6 *supra.*

ments gives full effect to the executive branch's decision to refuse to receive that government's diplomatic representatives. *See Guaranty Trust, supra* note 6, 304 U.S. at 138, 58 S.Ct. at 791; *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410–11, 84 S.Ct. 923, 930–31, 11 L.Ed.2d 804 (1964); *Transportes Aereos De Angola v. Ronair, Inc.*, 544 F.Supp. 858, 862 (D.Del.1982).

█ Indeed, to bar the suit once control has passed to a recognized government might be seen as inconsistent with normal comity. "[F]riendly foreign governments are not to be denied the privilege of suing in our courts." *Japanese Gov't v. Commercial Casualty Ins. Co.*, 101 F.Supp. 243, 246 (S.D.N.Y.1951); *see also Kunstsammlungen Zu Weimar v. Elicofon*, 678 F.2d 1150, 1156 (2d Cir.1982) (noting that district court permitted instrumentality of formerly unrecognized government to intervene as plaintiff after government was recognized; court had denied intervention when government was unrecognized). While South Africa played no direct part in the litigation below, it has filed a brief in this court as intervenor opposing the dismissal of the claim and asserting its position as the present real party in interest.[11] We therefore find particular difficulty with the assertion that plaintiff should be forever barred from pursuing the litigation solely because of its asserted involvement in attempts to circumvent nonrecognition policy. Insofar as the claim now rests in Achievers, the nonrecognition policy applies to Achievers only if Achievers was an arm or instrumentality of an unrecognized government. The very phrase "arm or instrumentality" connotes that Achievers did not act independently in attempting to circumvent nonrecognition, but was created and controlled by ROB.

10. See note 2 *supra.* Therefore, we do not think that the lack of any showing that the State Department has changed its position with regard to the claim at issue herein is a significant factor.

11. Counsel for South Africa asserted at oral argument that the statute of limitations precludes South Africa from filing a new complaint in its own name, so that the trial court's action would affirmatively harm the interests of a recognized government.

Viewed in this manner, the claim against the alleged fraudulent wrongdoers may be seen as ultimately "a claim on behalf of the people [the government] purports to represent." *Elicofon, supra*, 358 F.Supp. at 752; see note 6 *supra*. Extinguishing the claim would seem a disproportionate result not supported by the case law. We are persuaded by the several holdings in the *Elicofon* litigation. There, the district court initially concluded that the unrecognized German Democratic Republic ("GDR") had granted "juristic person status" to its instrumentality, the Weimar Art Collection, ("the Collection"), in order "to avoid the obstacle erected against a non-recognized power" by enabling the Collection to prosecute the suit in question as an independent entity.[12] *Id.* at 756. The court held that, as an arm or instrumentality of an unrecognized government, the Collection could not intervene in existing litigation or itself bring suit. *Id.* at 757. Nevertheless, the court subsequently vacated its prior order and permitted the Collection to intervene as plaintiff after the United States officially recognized the GDR. *Elicofon, supra*, 678 F.2d at 1156.[13] Thus it appears that the prior action of the unrecognized GDR, although taken "in derogation of the authority of the President of the United States in foreign affairs," 358 F.Supp. at 756, did not bar the subsequent assertion of the claim after recognition was conferred.

We conclude that any bar that once may have existed stemming from Achievers's asserted status as an arm or instrumentality of

an unrecognized government disappeared when ROB was reincorporated into South Africa. Accordingly, the trial court order appealed from is vacated and the case remanded for further proceedings.[14]

*So ordered.*

---

12. The Federal Republic of Germany ("FRG"), which at the time was the only government recognized by the United States as the representative of the people of Germany, sued Elicofon in district court for the return of paintings stolen from Germany after the second World War and later purchased in good faith by Elicofon. *Elicofon*, 358 F.Supp. at 749. The GDR filed a similar suit against Elicofon. The Collection, alleging that it owned the paintings at the time of the theft, sought to intervene in the FRG's suit as a "juristic person" independent of the GDR. *Id.* The court denied intervention to the Collection and dismissed the GDR's suit. *Id.* at 757.

13. After recognition of the GDR, the FRG was granted leave to withdraw from the litigation on the ground that "prior impediments to the ability of [the Collection] to pursue this action had been removed." *Elicofon, supra*, 678 F.2d at 1156.

14. Appellees urge us to affirm the trial court's grant of summary judgment on the alternative grounds that legal malpractice claims are not assignable and that RICO is not applicable. The trial court denied summary judgment on those grounds in its order of September 8, 1994. We see no occasion to address these issues on this appeal. Denials of summary judgment are generally nonappealable and nonreviewable, *Morgan v. American Univ.*, 534 A.2d 323, 325–29 (D.C. 1987), and the issues may be affected by further developments in the litigation. We do not understand the trial court to have dealt with the nature of the assignment, except insofar as relevant to Achievers's status as an arm or instrumentality of ROB, in the order that is the subject of this appeal.