*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-AA-734

VARNUM PROPERTIES, LLC, PETITIONER,

V.

DISTRICT OF COLUMBIA
DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, RESPONDENT.

On Petition for Review of an Order of the
District of Columbia Office of
Administrative Hearings
(DCRA-112-15)

(Submitted March 1, 2018                                   Decided March 14, 2019)

*Phillip J. Collins* was on the brief for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the brief was filed, *Loren AliKhan*, Deputy Solicitor General at the time the brief was filed, and *Mary L. Wilson*, Senior Assistant Attorney General at the time the brief was filed, were on the brief for respondent.

Before GLICKMAN and THOMPSON, *Associate Judges*, and NEBEKER, *Senior Judge*.

THOMPSON, *Associate Judge*:     On December 7, 2015, the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA") revoked a building permit (Building Permit No. B1411058, hereafter "the Building Permit") that had been issued to Westend Development LLC ("Westend Development"), the

trade name of Varnum Holdings, LLC ("Varnum Holdings"). Thereafter, petitioner Varnum Properties, LLC ("VP") petitioned the Office of Administrative Hearings ("OAH") for review of the DCRA revocation decision. After the OAH Administrative Law Judge ("ALJ") raised *sua sponte* the issue of whether VP had standing to appeal the revocation decision, VP responded by filing a motion to add Varnum Holdings as an additional petitioner whose participation was "necessary to 'effectively and completely adjudicate the dispute.'" In a May 9, 2016, Final Order (the "May 9 Order"), the OAH ALJ denied the motion to add Varnum Holdings as a party and dismissed VP's petition on the ground that VP lacked standing to challenge the revocation.[1] VP sought reconsideration of that ruling, and on July 8, 2016, the OAH ALJ issued an Order Denying Reconsideration of

---

[1] The ALJ's reference to "standing" was a reference to regulatory standing, i.e., standing to appeal under 12A DCMR § 105.6.4.1 (2015) (permitting an appeal by the "permit holder"), not to Article III-type standing, which requires a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief[,]" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (internal quotation marks omitted), and which must exist "at the time the complaint is filed," *id.* at 91 (internal quotation marks omitted). OAH has sometimes dismissed cases for lack of actual injury-in-fact, *see, e.g.*, *District of Columbia for Reasonable Dev. v. District of Columbia Dep't of Consumer & Regulatory Affairs*, No. 2017-DCRA-00021, 2017 D.C. Off. Adj. Hear. LEXIS 28, at *5 (OAH Dec. 11, 2017), but, in the orders in dispute here, the ALJ did not suggest (and respondent DCRA does not suggest) that VP lacked standing in that sense to challenge the revocation of the Building Permit.

Final Order (the "July 8 Order"). VP now seeks review of the May 9 and July 8

Orders. We reverse and remand.

## I.

The Building Permit authorized construction work at 1521 Varnum Street,

N.W. (the "Property") (specifically, the conversion of a single family dwelling into

two flats).[2] VP asserts that the "underlying zoning" has been changed since the

Building Permit was issued, with the result that "any new permit application for

the same project would no longer be permitted." VP further asserts that DCRA's

counsel has informed VP that "the only change to the Building Permit that would

be considered would be a new application under the revised zoning regulations."

According to VP, this means that DCRA will not approve a request by VP to

transfer the Building Permit to VP.[3]

---

[2] Elsewhere, the record suggests that the construction project was to convert the Property into a "pop-up" seven-unit apartment building, but that aspect of the project appears to be the subject of a building permit with a number different from the one assigned to the Building Permit in issue here.

[3] *See* 12A DCMR § 105.3.8 (2016) ("The holder of a valid active building permit shall be authorized to amend it[.]"). DCRA takes the position that the revoked Building Permit "is not valid and is not active." (emphasis removed).

In petitioning for review of the December 7, 2015, notice of revocation of the Building Permit, VP asserted that it was the "successor-in-interest to Varnum Holdings, LLC d/b/a Westend Development." However, in an April 1, 2016, order denying VP's first motion for summary judgment, the ALJ found that there was no record evidence that VP was the owner of the Property and no evidence of VP's standing to appeal the revocation notice. As part of a subsequent, renewed motion for summary adjudication, VP submitted the affidavit of its managing member, Michael Taylor, to support VP's assertion that VP was formerly known as AMT-Varnum, LLC ("AMT-Varnum"); that on or about November 12, 2015 (about three weeks prior to the notice of revocation), AMT-Varnum purchased the Property from Varnum Holdings, d/b/a Westend Development; and that VP therefore "is the current owner of the Property."

The ALJ ruled on VP's renewed motion for summary judgment on April 11, 2016. Citing 12A DCMR § 105.6.4.1 (2015) ("[t]he permit holder may appeal a notice of revocation . . . no later than 10 business days after service of written notice of the revocation upon the permit holder[]"), the ALJ explained that "[p]etitioner's right to appeal the [n]otice of the proposed revocation is dependent on it being the holder of the permit." The ALJ acknowledged that DCRA, in its opposition to the renewed motion for summary judgment, did not dispute VP's

ownership of the Property. What the ALJ found to be decisive, however, was that VP "ha[d] not alleged, let alone proved, that the permit in question was transferred to it by the permit holder."[4] The ALJ denied petitioner's renewed motion for summary judgment "since [p]etitioner ha[d] not demonstrated that it ha[d] standing to appeal the [n]otice and is entitled to the relief it request[s] as a matter of law."

Upon that ruling by the ALJ, DCRA on the same day filed a motion to dismiss VP's appeal, echoing the ALJ's finding that VP "ha[d] not established transfer of the permit from the permit holder to petitioner and therefore . . . d[id] not have standing" to pursue the appeal from the revocation notice. VP responded the next day (April 12, 2016) by moving to add Varnum Holdings as a party. VP attached to its motion a "Bill of Sale" reflecting that on that same day, it had purchased all of the membership interests in Varnum Holdings.

---

[4] The ALJ cited 12A DCMR § 105.5.3 (2015), which states that "[w]here a permit holder transfers a premises, including any building or other structure, for which an unexpired permit has been issued, . . . the permit may be transferred to the new owner, upon application by the new owner in a form specified by the code official." "Permits for installations related to electrical, gas, mechanical, plumbing, elevator and fire protection systems are not transferable," § 105.5.3 (2015); a restriction whose impact on the viability of the construction work planned for the Property is unclear from the record.

In the May 9 Order, the ALJ denied VP's motion to add Varnum Holdings as a party. The ALJ reasoned that VP had not shown either that it acquired all the assets of Varnum Holdings, including the Building Permit, or that the Building Permit was properly transferred to it in accordance with 12A DCMR § 105.5.3. The ALJ concluded that because the "legal right to the permit" was not with VP, VP lacked standing to contest the revocation.

VP sought reconsideration of the ALJ's ruling. After a telephonic hearing on July 6, 2016, the ALJ issued the July 8 Order, denying the motion for reconsideration. Construing VP's motion as a motion "to add, or substitute" Varnum Holdings as a party,[5] the ALJ found that VP had not stated grounds warranting reconsideration under OAH Rule 2828.5 (stating *inter alia* that an ALJ may change a final order if it "contains an error of law[,]" *id.* § 2828.5(c) (Apr. 2016). The ALJ reasoned that VP had "not shown how adding, or substituting, Varnum Holdings as a party[] would cure the standing issue: namely, by having

---

[5] The distinction between substitution and joinder "is essentially technical and committed to the discretion of the court." *McDonald v. H & S Homes, LLC*, No. 5:08-cv-298 (CAR), 2009 U.S. Dist. LEXIS 62204, at \*4 (M.D. Ga. Jul. 21, 2009); *see also id.* at \*4-5 (choosing to exercise the court's discretion in favor of joinder rather than substitution where the "ultimate interest" was the named plaintiff's and the defendant would not be prejudiced by having the named plaintiff's name "remain in the caption of the case").

the appeal brought by the owner of the Property holding in its name the building permit."

The instant petition for review followed. VP's primary contention is that the ALJ abused his discretion in declining to join Varnum Holdings, which VP asserts is "the real party in interest in this matter,"[6] as a petitioner. VP also argues that the ALJ abused his discretion in dismissing the appeal for VP's lack of standing without the ALJ's having conducted an evidentiary hearing (to the extent one was necessary to test, for example, VP's claim of ownership of the Property and of 100% of the membership interests in Varnum Holdings). VP asserts that the rules of joinder "require[d] that the [ALJ] exercise his discretion to allow the joinder of the entity that owns the [B]uilding [P]ermit[.]" VP seeks a remand for Varnum Holdings to be joined as a party and the appeal to be heard on the merits.

We review an OAH decision to determine if it was "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." D.C. Code § 2-510(a)(3)(A) (2012 Repl.).

---

[6] VP asserts that "as the owner of the [P]roperty and as owner of the company that holds the [B]uilding [P]ermit," it, too, is a real party in interest.

**II.**

OAH Rule 2816.1 (2016) provides that "[a]fter proper notice and an opportunity to be heard, an Administrative Law Judge may substitute a person or entity for a named party, or may add parties to a case." The OAH Rules do not prescribe what criteria an ALJ is to use to determine whether to permit the addition or substitution of parties, but OAH Rule 2801.1 (2016) provides that "[w]here these Rules do not address a procedural issue, an Administrative Law Judge may be guided by the District of Columbia Superior Court Rules of Civil Procedure to decide the issue." Further, when one of the Superior Court's "procedural rules is nearly identical to or the functional equivalent of a federal procedural rule, [this court] look[s] to cases interpreting the federal rule for guidance on how to interpret our own." *Estate of Patterson v. Sharek*, 924 A.2d 1005, 1009-1010 (D.C. 2007); *see also Springs v. United States*, 311 A.2d 499, 500 (D.C. 1973) ("[B]oth the advisory note and the cases interpreting the federal rule provide guidance for the proper interpretation of the Superior Court rule.").

D.C. Super. Ct. R. Civ. P. 17(a) (2016) provides that " [e]very action shall be prosecuted in the name of the real party in interest."[7] To that end, the Superior Court Rules of Civil Procedure "allow for liberal modification of the pleadings to ensure that the action is prosecuted in the name of the correct party[.]" *Jones v. Brooks*, 97 A.3d 97, 102 (D.C. 2014). In particular, D.C. Super. Ct. R. Civ. P. 17(a) (2016) states that:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Rule 17(a) is similar to its federal counterpart, FED. R. CIV. P. 17(a)(3), which "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made" and to "insure against . . . injustice." Fed. R. Civ. P. 17 advisory committee's note to 1966 Amendment (observing that "[m]odern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be

---

[7] "Some courts have described Rule 17's real-party-in-interest requirement as essentially a codification of th[e] nonconstitutional, prudential limitation on standing." *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008).

filed"). "The real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 362 (5th Cir. 2014) (internal quotation marks omitted); *see also Gantman v. United Pac. Ins. Co.*, 284 Cal. Rptr. 188, 191 (Cal. Ct. App. 1991) ("Generally, the person possessing the right sued upon by reason of the substantive law is the real party in interest.") (internal quotation marks omitted).

Here, the record supports that Varnum Holdings is the real party in interest. Because it is no longer the Property owner, it is not the entity that would ultimately benefit from reinstatement of the Building Permit; but as the holder of the Building Permit, it is the entity that possesses the right that may be sued upon (pursuant to 12A DCMR § 105.6.4.1). Further, the original failure to name Varnum Holdings as a petitioner appears to have been not a tactical maneuver, but a mistake, and an understandable one, because, at the time the Building Permit was revoked, Varnum Holdings no longer owned the Property (and, as discussed *infra*, even the OAH ALJ thought that a petitioner must be the owner of a property to appeal the revocation of a permit). In addition, VP filed its motion to join Varnum Holdings within a day after the ALJ ruled that VP lacked standing and DCRA moved to dismiss VP's petition. Thus, VP filed its motion to add Varnum Holdings within

"a reasonable time." Super. Ct. R. Civ. P. 17(a) (2016); *cf. HRC Hotels, LLC v. Metro. Bd. of Zoning Appeals Div. II*, 8 N.E.3d 203, 208 (Ind. Ct. App. 2014) (finding, in a matter involving a petition filed by a hotel's parent company for review of a zoning-variance decision, that a motion to substitute the adversely affected hotel as petitioner was brought within a reasonable time where it was filed within thirty days after the filing of a motion to dismiss the parent company's petition for lack of standing).

DCRA argues that VP could not cure its standing problem by adding Varnum Holdings as a petitioner given that Varnum Holdings, "the entity sought to be joined," did not file an appeal with OAH within ten business days after service of the written notice of revocation (and thus "did not note a timely appeal").[8] But both the language of Rule 17(a) and the weight of pertinent case law support a contrary conclusion. *See* Super. Ct. R. Civ. P. 17(a) (2016) ("[J]oinder, or substitution shall have the same effect as if the action had been commenced in the

---

[8] DCRA relies on a case, *Resident Council of Allen Parkway Vill. v. United States Dep't of Hous. & Urban Dev.*, 980 F.2d 1043 (5th Cir. 1993), that it asserts stands for the proposition that "a party with standing that does not note its own appeal may not lend its own standing to appeal to the actual appellant." But that case pertains to appellate court jurisdiction, not to trial court procedural rules governing the addition or substitution of parties. Again, OAH Rule 2801.1 provides for reference to the Superior Court Rules of Civil Procedure, not to rules of appellate procedure.

name of the real party in interest."); 6A CHARLES ALAN WRIGHT ET , ARTHUR R. MILLER, & MARY KAY KANE, Federal Practice and Procedure § 1555 (3d ed.) (2010 & 2018 Supp.) (hereafter "WRIGHT, MILLER & KANE") (observing that a conclusion that the relation-back doctrine applies can be "reached solely on the basis of the last sentence in Rule 17(a)" and explaining that "a correction in parties [under the federal rule similar to Rule 17] is permitted even after the statute of limitations governing the action has run"); *Link Aviation, Inc. v. Downs*, 325 F.2d 613, 613-15 (D.C. Cir. 1963) (holding that an insurer that was the real party in interest could be substituted for the insureds as plaintiffs after the statutory limitations period had run, even though "prior to the filing of the suit the insurers [had already become] subrogated to all rights and remedies of the original plaintiffs" such that "the original action should have been brought in [the insurers'] names rather than in the names of the insureds"; reasoning that "[a]ny other rule would be highly technical without meaningful purpose"); *Freese v. Department of Soc. Servs.*, 169 A.3d 237, 249, 250, 252 (Conn. App. Ct. 2017) (agreeing that "the class of persons eligible to file an administrative appeal [could not be enlarged] beyond those qualifying as aggrieved persons under" the relevant state regulation, but remanding because "substitution is available to cure lawsuits that . . . were [by mistake] commenced by unauthorized parties" "even after the statute of limitations has run"; reasoning, too, that "[w]hen a plaintiff is added to the case to correct a

mistake in ascertaining the real plaintiff in interest, the defendant rarely, if ever, will be prejudiced, as long as he was fully apprised of the claims against him and was prepared to defend against them" (internal quotation marks and brackets omitted)).[9]

---

[9] *See also, e.g.*, *HRC Hotels*, 8 N.E.3d at 208 (permitting motion to substitute even though the thirty-day period for filing a petition for judicial review had expired); *Breaker v. United States*, 977 F. Supp. 2d 921, 934 (D. Minn. 2013) (permitting the substitution of a corporation as plaintiff in lieu of the corporation's president because the corporation owned the property at the time the special-use permit applied for by the president was denied, the suit in the president's name was not the result of tactical maneuvering, and the claims and factual allegations would not change upon the substitution); *Anderson v. Bristol, Inc.*, 847 F. Supp. 2d 1128, 1135 (S.D. Iowa 2012) (holding that the error of the administrator of an estate in naming the estate rather than herself as plaintiff did not require dismissal of the action, because the amendment of the pleading to name the real party in interest as plaintiff, done promptly after a motion to dismiss was filed, avoided the statute of limitations bar, there was no prejudice to defendants, and the error was understandable); *Daniel v. Hines*, 2011 U.S. Dist. LEXIS 155140, at \*7-9 (D. Md. Oct. 4, 2011) (holding, in a case in which two plaintiffs were joined as real parties in interest after the passing of the three-year limitations period, that "[t]he ends of justice are served by application of the relation-back doctrine"; reasoning that "when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and . . . a liberal rule should be applied" (quoting *New York Central & H.R.R. Co. v. Kinney*, 260 U.S. 340, 346 (1922)); *cf. Achievers Invs. v. Karalekas*, 675 A.2d 946, 949 (D.C. 1996) (applying Super. Ct. R. Civ. P. 15(c) and stating that "when a plaintiff amends a complaint solely to cure a defect in capacity to sue, the amendment relates back to the filing of the original complaint"); WRIGHT, MILLER & KANE, § 1555 (noting that "Rule 15(c) has been used in conjunction with Rule 17(a) to enable an amendment substituting the real party in interest to relate back to the time the original action was filed").

In the instant case, it appears that DCRA had notice from the beginning that petitioner VP, which is represented by the same counsel who represented Varnum Holdings in litigation arising out of DCRA's previous (August 2015) unsuccessful effort to revoke the Building Permit, was continuing the effort to preserve the Building Permit that Varnum Holdings d/b/a Westend Development had obtained. No one has suggested that the addition or substitution of Varnum Holdings as a petitioner would change the claims, factual allegations or arguments to be resolved in a challenge to the notice of revocation. We also discern no prejudice to DCRA (and DCRA has not identified any prejudice) from the addition or substitution of Varnum Holdings as a petitioner.

The ALJ concluded nonetheless that the addition or substitution of Varnum Holdings as a petitioner would not have solved the standing problem and thus would not have prevented a forfeiture. The ALJ acknowledged that the permit was issued to "Westend Development LLC," recognized that this was represented to be the trade name for Varnum Holdings, and specifically found that Varnum Holdings was the permit holder. The ALJ reasoned, however, that Varnum Holdings no longer owned the Property and for that reason lacked standing to appeal.

The ALJ's reasoning is flawed because it was premised on reading into 12A DCMR § 105.6.4.1 a requirement that the regulation does not contain. Section 105.6.4.1 states that "[t]he permit holder may appeal a notice of revocation"; it does not require that the permit holder also be the owner of the property in order to have standing to appeal (and indeed such a limitation would be illogical since owners are not the only ones who can obtain a building permit in the first instance).[10] Thus, the ALJ legally erred in concluding that adding Varnum Holdings as a petitioner would not have cured the regulatory standing problem. Given that error and all the circumstances mentioned above, we conclude that the OAH ALJ erroneously exercised his discretion in denying the motion to add Varnum Holdings as a party.[11]

---

[10] *See* 12A DCMR § 105.1 (2014) (permitting "an owner or authorized agent" to apply for a building permit).

[11] VP also argues that joinder of Varnum Holdings was required not only under Super. Ct. R. Civ. P. 17 but also under Super. Ct. R. Civ. P. 19(a) (2016), which states in pertinent part that "[a] person . . . shall be joined as a party . . . if . . . in the person's absence complete relief cannot be accorded among those already parties[.]" *See Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 21 (D.C. 1991) ("[W]e join the federal courts and interpret Rule 19 to require a trial judge to order joinder whenever possible."). Given our conclusion described above, we need not consider the applicability of Rule 19(a).

Moreover, because Varnum Holdings sold the Property to VP before the notice of revocation was issued and because the notice of revocation kept VP from obtaining a transfer of the permit, see *supra* note 3 and the accompanying text, the ALJ's reading of § 105.6.4.1 meant that no one had standing to challenge the revocation — neither the non-owner permit holder (Varnum Holdings); nor the owner of the Property (VP, even though by the time DCRA moved to dismiss the petition, VP "controlled the entity that held the permit"); nor (it appears) anyone else. This is a case in which "[t]o adopt the rule urged by respondent and deny standing . . . would insulate decisions such as this from judicial review, a result clearly contrary to the public interest." *Har Enters. v. Brookhaven*, 548 N.E.2d 1289, 1293 (N.Y. 1989).

Wherefore the decisions of OAH dismissing the appeal of the revocation notice and declining to reconsider that final ruling are reversed, and the cause is remanded for further proceedings not inconsistent with this decision.

*So ordered.*