Peter C. LABOVITZ and Sharon M. Labovitz, Appellants/Cross–Appellees,

v.

The WASHINGTON TIMES CORPORATION and News World Communications, Inc., Appellees/Cross–Appellants.

Nos. 97–7203, 97–7204.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 7, 1998.

Decided April 20, 1999.

Stacy A. Feuer argued the cause for appellants/cross-appellees. With her on the briefs was Alan B. Croft. Eric L. Lewis entered an appearance.

Lee T. Ellis, Jr. argued the cause and filed the briefs for appellees/cross-appellants.

Before: GINSBURG, HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Peter and Sharon Labovitz, shareholders, directors, and officers of DCI Publishing, Inc., appeal the dismissal of several counts of their complaint alleging that the *Washington Times*,[1] a daily metropolitan newspaper, attempted to acquire DCI at a "distressed price." The Labovitzes alleged that the *Times*' dealings with them and DCI substantially reduced the value of their interests in DCI, triggered their personal guarantees of loans to DCI, and

resulted in the seizure of personal property that they had pledged as collateral for DCI's obligations. Because, in their view, these injuries represent individual claims, the Labovitzes contend that the district court erred in dismissing them under Delaware and Virginia law on the ground that they were derivative of losses suffered by DCI. On cross appeal, the *Times* contends that the district court erred in excluding evidence relevant to its setoff defense that any injury Mr. Labovitz suffered from the alleged breach of the *Times*' contract with him was "set off" by his failure to make certain payments on behalf of DCI to a third-party bank.

Because a personal guarantor is sufficiently similar to a creditor of a corporation, and because the Labovitzes' complaint does not allege facts showing a special injury to themselves, we affirm the dismissal of their claims for breach of fiduciary duty, fraud, and negligent misrepresentation as derivative under Delaware law. Because, further, the Labovitzes are not the real parties in interest to pursue claims of damage to their property interests in DCI under the Virginia Conspiracy Act, we affirm the dismissal of their claim under that statute. Finding no abuse of discretion by the district court in excluding evidence proffered as part of the *Times*' setoff defense, we affirm the orders and judgment of the district court.

I.

In reviewing the order dismissing seven counts of the Labovitzes' complaint, this court views the allegations in the complaint as true, although it need not accept "purely legal conclusions masquerading as factual allegations." *Maljack Prods., Inc. v. Motion Picture Ass'n of America, Inc.*, 52 F.3d 373, 375 (D.C.Cir.1995). DCI, incorporated in Delaware, operated several

---

1. We will refer to both appellees, the *Washington Times* and its parent company, News  World Communications, as "the *Times*."

suburban community newspapers in Maryland and Virginia. The Labovitzes and another individual, John Hanes, apparently each owned one-half of DCI prior to 1991.[2] According to the complaint, in January 1991, the *Times* began discussions with the Labovitzes and Hanes about acquiring DCI. During the course of their negotiations, the *Times* provided cash and printing services to DCI worth over $2 million. After several months, the *Times* decreased its financial contributions to DCI but told the Labovitzes that it would fully fund DCI after they executed several loan agreements. Under these agreements, which the parties signed in August 1991, the *Times* acquired a fifty-percent ownership interest in DCI in exchange for providing several million dollars in cash and services to allow DCI to continue operating. The *Times* also had the option of acquiring total control of DCI and its assets at fair market value after two and one-half years. To avoid public scrutiny of the *Times*' ownership interest in DCI,[3] the parties structured the deal in the form of a loan from the *Times* to DCI. Peter Labovitz retained his management positions as president and chief executive officer of DCI.

Shortly thereafter, however, the *Times* began secret negotiations with John Hanes with the idea of committing DCI to purchase accounting and consulting services from the *Times* that it could not afford. In addition, the *Times*' agents, Richard Jones and Michael Webb, proposed to Peter Labovitz that he relinquish day-to-day control of DCI in exchange for payments of $20,000 monthly for six months and a promise that the *Times* would provide further financial support to DCI. Within a few months after Peter Labovitz agreed to those terms, he was barred from access to DCI financial records, and the *Times* transferred DCI assets and personnel to the *Times* and elsewhere without his knowledge, instructing DCI employees to refrain from communicating with him. The *Times* also refused to pay him $20,000 monthly and demanded that he and Sharon Labovitz surrender their interests and involvement in DCI, which they declined to do. The *Times* then withdrew its financial support from DCI and demanded that DCI pay $2 million in deferred printing, composing, accounting, and consulting service costs. According to the complaint:

> [t]he Times knew that its actions in withdrawing support from DCI would cause substantial injury to plaintiffs by (a) substantially reducing the value of plaintiffs' interests in DCI; (b) triggering plaintiffs' personal guarantees of DCI's corporate debts, and (c) leading to the seizure of plaintiffs' property, which had been pledged as collateral for DCI's obligations.

In January 1993, DCI filed for bankruptcy,[4] and in 1995, the Labovitzes filed suit against the *Times*.

2. Specifically, the complaint alleges that the Labovitzes owned "no less than one-half of the controlling interest" of DCI, while John Hanes and companies affiliated with him owned "approximately one-half." The complaint's wording suggests that the Labovitzes and Hanes were the only shareholders in DCI; the Labovitzes' brief, however, suggests that several of the companies under DCI's control had minority shareholders.

3. The Labovitzes allege that the *Times* wished to keep its involvement in DCI secret because of the newspaper's ties to the Unification Church and its leader Reverend Sun Myung Moon. The *Times* allegedly feared that publicity of its ownership interest in DCI would adversely affect DCI's revenues due to negative public attitudes about the Unification Church.

4. In July 1996, the bankruptcy court approved a settlement between NationsBank (one of DCI's creditors) and the *Times*. The settlement required that NationsBank, acting on behalf of DCI, agree to dismiss with prejudice its claims against the *Times* for breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, and equitable subordination, but it preserved the Labovitzes' right to pursue any personal claims they might have against the *Times*. The Labovitzes agreed to the terms of the settlement. Although the *Times* contends that the Labovitzes violated this agreement by pursuing their claims, the court must first determine

In their complaint the Labovitzes allege that the *Times* owed them a fiduciary duty (count one) because of its "de facto control" over DCI, and that it breached this duty by (1) operating DCI for its own benefit, rather than DCI's; (2) attempting to force Peter Labovitz to turn over his shares in DCI to the *Times* at a distressed price and to surrender his management role; and (3) refusing to pay Peter Labovitz the agreed-upon compensation of $20,000 monthly for six months. They further allege that the *Times* committed fraud (counts two and three) and negligent misrepresentation (count four) by making false statements about its commitment to the financial success of DCI to induce them to sign loan documents in August 1991, and to surrender day-to-day control of DCI. They also allege that the *Times* violated the Virginia Conspiracy Act (counts five and six), § 18.2–499(A) & (B), by conspiring with the *Times'* agents and John Hanes to injure the Labovitzes' business and property interests in DCI. Finally, they allege breach of contract (count seven) and promissory estoppel (count eight) based on the *Times'* failure to pay Peter Labovitz $20,000 monthly and to continue to support DCI financially.

The district court granted the *Times'* motion to dismiss the complaint except for count seven (breach of contract). The court ruled that the dismissed counts involved claims for injuries that derived from losses suffered by DCI, and that under Delaware and Virginia law,[5] the Labovitzes could not pursue their claims as individuals. *Labovitz v. Washington Times Corp.*, 900 F.Supp. 500, 504 (D.D.C.

1995). Specifically, the court found that the injuries alleged by the Labovitzes— such as loss in stock value and losses associated with their status as guarantors—were derivative in nature. *Id.* at 504–05. On the remaining claim for breach of contract, a jury awarded Peter Labovitz $120,000.

On appeal, both sides contend that the district court erred, the Labovitzes maintaining that the dismissed counts involved claims for individual injuries separate and apart from those suffered by DCI, and the *Times* maintaining that the exclusion of evidence that Peter Labovitz failed to make certain mortgage payments on behalf of DCI to an outside lender was relevant as a setoff defense. We address three primary issues, the first two *de novo, Maljack,* 52 F.3d at 375, and the third for abuse of discretion, *see Chedick v. Nash,* 151 F.3d 1077, 1084 (D.C.Cir.1998): (1) whether under Delaware law the Labovitzes were the real parties in interest to pursue claims for breach of fiduciary duty, fraud, and negligent misrepresentation,[6] (2) whether Virginia law permits the Labovitzes to bring claims under the Virginia Conspiracy Act, §§ 18.2–499 & –500, and (3) whether the district court abused its discretion by excluding as irrelevant evidence related to the *Times'* setoff defense.

## II.

### A.

■ Under Delaware law, shareholders can bring an individual claim if they

---

whether the Labovitzes' claims are individual or derivative, before it can address the impact of the settlement. In view of our disposition, however, we do not reach this issue.

5. The district court applied Delaware law to counts one through four and Virginia law to counts five and six. The Labovitzes do not appeal the dismissal of count eight for promissory estoppel; it became moot when the district court allowed Peter Labovitz to pursue his breach of contract claim under count seven.

6. Although the *Times* characterizes this as a standing question, the issue here is who is the real party in interest, *see* Fed.R.Civ.P. 17(a), to bring a lawsuit "under the governing substantive law to enforce the asserted right." *Whelan v. Abell,* 953 F.2d 663, 672 (D.C.Cir. 1992). In the shareholder context, the question is "whether the corporation should be entitled to bring an action, at least in the first instance, without the distraction of stockholders' suits." *Id.*

suffer injuries "directly or independently of the corporation."[7] *Kramer v. Western Pacific Indus., Inc.*, 546 A.2d 348, 351 (Del.1988). Claims based on injury to the corporation, however, are derivative in nature and any damages suffered are owed to the corporation. *Id.* To determine whether claims are individual or derivative, courts "must look to the nature of the wrongs alleged in the body of the complaint, not to the plaintiffs' designation or stated intention." *Id.* (quoting *Lipton v. News Int'l, Plc,* 514 A.2d 1075, 1078 (Del. 1986)). Plaintiffs must allege a "special injury" to themselves, apart from that suffered by the corporation. *Cowin v. Bresler,* 741 F.2d 410, 414–15 (D.C.Cir.1984). This injury can arise in two situations: first, "where the allegedly wrongful conduct violates a duty to the complaining shareholder independent of the fiduciary duties owed that party along with all other shareholders," such as a duty that arises out of an employment relationship, or second, "where the conduct causes an injury to the shareholders distinct from any injury to the corporation itself," such as losses resulting from a company wrongfully withholding dividends. *Id.; see also Williams v. Mordkofsky,* 901 F.2d 158, 164 (D.C.Cir. 1990). The Delaware Supreme Court observed in *Lipton* that "[a] shareholder who suffers an injury peculiar to itself should be able to maintain an individual action, even though the corporation also suffers an injury from the same wrong." 514 A.2d at 1079.

■ The Labovitzes allege in their complaint that the *Times'* "de facto control over DCI's operations" created a fiduciary relationship "between the Times, on the one hand, and DCI and the [Labovitzes], on the other." On appeal, the Labovitzes contend that because of this relationship the *Times* owed the Labovitzes a "special duty." The Labovitzes, however, merely assert that such a duty exists without explaining its exact nature or citing any relevant authority. Although the Labovitzes contend that they suffered injuries in roles other than shareholder, *see Cowin,* 741 F.2d at 415, they fail to describe in any detail the fiduciary duty owed to them in those roles. *See Taha v. Engstrand,* 987 F.2d 505, 507 (8th Cir.1993). *But see Barger v. McCoy Hillard & Parks,* 346 N.C. 650, 488 S.E.2d 215, 222 (1997). But, assuming that the *Times* owed the Labovitzes a duty in their non-shareholder roles, the Labovitzes fail to identify how their injuries are unique to themselves and independent of the harm suffered by DCI.

The Labovitzes' major contention on appeal focuses on their role as guarantors of DCI's loan obligations. Specifically, they allege that the *Times'* failure to fund DCI fully as promised prevented DCI from making payments on its debt obligations, thereby triggering the Labovitzes' personal guarantees. In effect, the *Times* allegedly set into motion a series of events that first injured DCI and then the Labovitzes. While acknowledging that Delaware courts had not yet addressed whether a stockholder-guarantor could bring suit for injuries suffered as a result of wrongdoing inflicted on a corporation, the district court relied on the analysis of the Seventh Circuit Court of Appeals in *Mid–State Fertilizer Co. v. Exchange Nat'l Bank of Chica-*

7. The district court noted in its order that neither party addressed which state law governed claims one through four of the complaint. Conducting its own choice-of-law analysis, the district court concluded that Delaware law governed the Labovitzes' shareholder claims of breach of fiduciary duty, fraud, and negligent misrepresentation because DCI was incorporated in that state—a conclusion the parties do not contest on appeal. *See also Cowin v. Bresler,* 741 F.2d 410, 414 n. 4 (D.C.Cir.1984).

The Labovitzes' complaint intermingles injuries that are clearly derivative under Delaware law, such as a loss in the value of stock affecting all shareholders, *see Kramer v. Western Pacific Indus., Inc.,* 546 A.2d 348, 353 (Del.1988), with other injuries that may or may not be so. To some extent the failure to address the choice-of-law issue would explain the difficulty now confronting the Labovitzes in attempting to fit the language of the complaint into legal theories recognized under Delaware law.

*go,* 877 F.2d 1333, 1336–37 (7th Cir.1989), in concluding that the Labovitzes' injuries as guarantors were directly tied to the fate of the corporation and therefore were derivative losses.

In *Mid–State,* the sole shareholders of Mid–State (Lasley and Maxine Kimmel) guaranteed their company's financial obligations when it obtained revolving credit from a bank. When the bank discovered that Mid–State was operating at a loss, it placed restrictions on new credit, pushing Mid–State into default. Both Mid–State and the Kimmels sued the bank for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(a) and 1964(c), and the Bank Holding Company Act, 12 U.S.C. §§ 1972 and 1975. *Id.* at 1333–35. Applying general principles of corporate law, *id.* at 1335, the Seventh Circuit held that the Kimmels' injuries were derivative of Mid–State's because guarantors were no different from "shareholders, creditors, managers, lessors, suppliers, and the like [who] cannot recover on account of injury done the corporation," in part because allowing such suits "restrict[s] recoveries to the directly-injured party."[8] *Id.* at 1336. The court explained, persuasively in our view, that:

> [t]he participants most directly affected by injury inflicted on the firm are the stockholders—for their investment is first to be wiped out. Creditors come next. Guarantors are contingent creditors. If the firm stiffs a creditor, that creditor can collect from the guarantor; the guarantor succeeds to the original creditor's claim against the firm. We know that creditors cannot recover directly from injury inflicted on a firm, so guarantors as potential creditors likewise cannot recover.

*Id.* In their various roles in the corporation, including as guarantors, the Kimmels "gained and lost with Mid–State. A blow costing Mid–State $1 could not cost the Kimmels more than $1, [and] [a]n award putting the $1 back in Mid–State's treasury would restore the Kimmels to their former position." *Id.* at 1335. The court concluded that guarantors "must take their place in line as creditors in the bankruptcy action (or outside of it), dependent now as before on the success of the firm in which they. invested." *Id.* at 1336–37. Only "[w]hen they suffer direct injury—injury independent of the firm's fate— . . . may [they] pursue their own remedies."[9] *Id.* at 1336. *Weissman v. Weener,* 12 F.3d 84, 86 (7th Cir.1993) reaffirmed *Mid–State's* analysis, holding that even when a third party injures a corporation, forcing it into bankruptcy and triggering its guarantors' obligations on loans, the shareholder-guarantors' claims are generally derivative rather than direct, and therefore they are not "the real party in interest." *Id.* at 87.

The Labovitzes attempt to distinguish *Mid–State* and its progeny on three grounds. They first contend that the *Times* owed them a special duty, but, as discussed earlier, they fail to describe the exact nature or origin of such a purported duty. *See supra* p. 901. Assuming such a duty existed, however, an injury flowing from the triggering of the guarantees is a collateral consequence of the *Times'* direct injuries to DCI. As in *Weissman,* a shareholder-guarantor is not a "real party in interest" where he or she "is suing not the bank [collecting on the guarantee] but rather the third party whose alleged wrongdoing is said to have driven the corporation into bankruptcy." 12 F.3d at 87. Second, the Labovitzes allege that the *Times* intended to harm them, but they

---

8. Likewise, in *Taha v. Engstrand,* the Eighth Circuit Court of Appeals observed that "[s]hareholders, creditors or guarantors of corporations generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation." 987 F.2d at 507.

9. The court specifically observed that "[t]he Kimmels do not contend that [the bank] broke the contracts by which the Kimmels guaranteed Mid–State's borrowings." *Id.* at 1336.

fail to explain how this factor changes the derivative nature of their injury: to the extent the *Times* never intended to "provide necessary future financial support" for DCI, DCI and not the Labovitzes suffered a direct injury.

Finally, the Labovitzes attempt to distinguish *Mid–State*, where the plaintiffs failed to "establish a nexus between the bank's wrongdoing and their agreement to enter into the guarantees," Appellants' Br. at 26, by relying on Judge Ripple's concurring opinion cautioning parties not to read *Mid–State* to mean that guarantors can never bring a claim for injury because "there are situations—especially in the case of a closely held corporation—where the relationship between the corporation and the guarantor, combined with the conditions directly imposed by the bank on the guarantor, may require that the guarantor have standing to bring such actions." *Mid–State*, 877 F.2d at 1340 (Ripple, J., concurring).[10] To the extent the Labovitzes suffered injury in their role as guarantors on debts owed to parties other than the *Times*, *Mid–State* and *Weissman* clearly identify such losses as derivative. The more difficult question arises for guarantees made on loans owed directly to the *Times*; if the *Times'* conduct forces DCI into bankruptcy, it will also trigger the Labovitzes' loan obligations to the *Times*.

The Labovitzes maintain that they personally guaranteed $2 million advanced to DCI by the *Times*.[11] Taking the allegation as true, *see EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 625 (D.C.Cir.1997), still does not demonstrate how the Labovitzes have suffered a special injury apart from other creditors and guarantors. The fact that the *Times* may have required the Labovitzes to make good on their guarantees when DCI defaulted on its loan obligations is a duty imposed on every guarantor. *Weissman*, 12 F.3d at 87. John Hanes stands in no different position than the Labovitzes. *See supra* n. 11; *see also DLB Collection Trust v. Harris*, 893 P.2d 593, 597 (Utah Ct.App.1995). Finally, to the extent the *Times* may have breached the loan agreements that established these guarantees, the Labovitzes' breach of contract claim relates only to the *Times'* failure to pay Peter Labovitz agreed-upon compensation, a claim he pursued before a jury, and its failure to fund DCI fully, a direct injury to the corporation rather than Mr. Labovitz.[12] Put otherwise, as contingent creditors, the Labovitzes fail to explain why their injury places them in a different position than every other creditor and guarantor owed money when DCI entered bankruptcy, nor do they plead a breach of contract claim related to the guarantees.[13]

10. The court in *Weissman*, however, noted that Judge Ripple's view remained an open question in the Seventh Circuit Court of Appeals. 12 F.3d at 87.

11. Although this allegation appears in the Labovitzes' brief and not in the complaint, an exhibit attached to the complaint suggests that the *Times* may have sought "personal guarantees" from Peter Labovitz and John Hanes.

12. *Buschmann v. Professional Men's Assoc.*, 405 F.2d 659 (7th Cir.1969), on which the Labovitzes rely, is distinguishable. Buschmann entered into a contract to establish a new corporation, transfer assets to it in exchange for stock, and guarantee the corporation's debts to a third-party bank. In exchange, the Association promised to manage the new corporation, an obligation it allegedly violated by diverting the corporation's assets for its own use. *Id.* at 662. The court held that, even though the corporation had a claim for mismanagement, Buschmann, the stockholder-guarantor, also had an individual cause of action for breach of contract against the Association "even though the corporate cause of action and Buschmann's cause of action result from the same wrongful acts." *Id.* at 662, 663. Peter Labovitz's breach of contract claim does not relate to his role as guarantor.

13. During oral argument, counsel for the Labovitzes argued that, as to several of the corporation's loans, they were co-obligors, rather than "contingent lenders" as in the case of *Mid–State*. We need not explore the rights of co-obligors to sue in these circumstances, however, because the Labovitzes failed to raise this contention in their initial brief, and to the extent they mention in their reply brief

We can quickly dispose of the Labovitzes' remaining claims of injury. Although they concede on appeal that the loss they suffered in share value is a derivative harm, *see Kramer*, 546 A.2d at 353, they contend that they suffered individual injuries to the extent that the *Times* fraudulently induced Peter Labovitz to leave his management position. This injury was part and parcel of Peter Labovitz's breach of contract claim. Furthermore, the failure to keep DCI financially afloat is an injury suffered directly by the corporation and only indirectly experienced by the Labovitzes as shareholders or guarantors. *See id.* Likewise, to the extent the Labovitzes relied on the *Times*' promises to keep DCI afloat in exchange for their signing the loan agreements, DCI suffered the direct injury, not the Labovitzes.

Consequently, the district court properly dismissed counts one through four of the complaint because the Labovitzes' alleged injuries derive from harm directly inflicted on DCI and are not any different from those suffered by other individuals (such as shareholders or creditors) in a similar position to the Labovitzes. As the Seventh Circuit in *Mid–State* observed, to allow recovery by individual shareholders for derivative claims

> is a form of double counting. "Corporation" is but a collective noun for real people—investors, employees, suppliers with contract rights, and others. A blow that costs "the firm" $100 injures one or more of those persons. If, however, we allow the corporation to litigate in its own name and collect the whole sum (as we do), we must exclude attempts by the participants in the venture to recover for

their individual injuries.... Divvying up the recovery [to the participants individually] would be a nightmare.... Why undertake such a heroic task when recovery by the firm handles everything automatically?—for investors, workers, lessors, and others share any recovery according to the same rules that govern all receipts.

877 F.2d at 1335–36. Indeed, "a suit by an indirectly injured victim could be an attempt to circumvent the relative priority its claim would have in the directly injured victim's liquidation proceedings." *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 274, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (citing *Mid–State*, 877 F.2d at 1336). The remedy for the Labovitzes, therefore, was in the bankruptcy court because any recovery by DCI could be redistributed to its creditors, including the Labovitzes. To the extent that DCI was not made whole, the proper place to object was at the time of the bankruptcy settlement agreement, to which the Labovitzes consented.

## B.

■ The Labovitzes also contend that the district court erred in viewing their claims under the Virginia Conspiracy Act as alleging only derivative injuries.[14] In counts five and six, the Labovitzes allege that the *Times* "wilfully and maliciously" conspired with John Hanes and a consultant, hired by the *Times* to examine DCI's management, to "injure the business and property interests of plaintiffs Peter Labovitz and Sharon Labovitz in DCI." These counts, as the district court found, "clearly reveal that [the Labovitzes] are alleging

---

that they were "co-obligors, guarantors, and pledgors," they failed to make an argument as to how the different labels represent different harms; the discussion in their briefs of the injury they suffered relates to their role as guarantors. Under the circumstances, we decline to consider this contention. *See Natural Resources Defense Council, Inc. v. EPA*, 25 F.3d 1063, 1071 n. 4 (D.C.Cir.1994).

14. Va Code Ann. § 18.2–499(A)(i) (Michie 1996) prohibits conspiracies "for the purpose of ... willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever...." Section 18.2–499(B) forbids attempts to procure the participation of another person to enter a conspiracy under § 18.2–499(A). Section 18.2–500 authorizes treble damages for violations of § 18.2–499.

injury to their interests in the DCI corporation only," and that these losses were also derivative in nature. *Labovitz*, 900 F.Supp. at 506 n. 10.

██ Under §§ 18.2–499 and –500 of the Virginia Conspiracy Act, a right of action exists "only when malicious conduct is directed at one's business, not one's person"; claims relating to one's employment and employment reputation are not covered by the statute. *Buschi v. Kirven*, 775 F.2d 1240, 1259 (4th Cir.1985); *see also Picture Lake Campground, Inc. v. Holiday Inns, Inc.*, 497 F.Supp. 858, 863–64 (E.D.Va. 1980). In *Picture Lake*, the district court ruled that a business ("First Management") renting property to a second business ("Picture Lake") could not pursue claims under either §§ 18.2–499 & 18.2–500 or common law tort for injuries suffered by the second business. The district court reasoned that

> just as a stockholder of a corporation has no standing to sue third parties for wrongs inflicted by those third parties upon the business and property interest of the corporation, it is evident that First Management has no standing to sue [defendant] Holiday Inns for wrongs allegedly inflicted by Holiday Inns on the business or property interests of Picture Lake.

497 F.Supp. at 863. Likewise, DCI rather than the Labovitzes has the authority under the Virginia statute to pursue conspiracy claims against the *Times*. Neither the Labovitzes' complaint nor their briefs on appeal shed much light on the specific property interests the *Times*' alleged conspiracy injured, other than their interests in DCI. Before the district court, the Labovitzes claimed as injury harms that are not personal to themselves, such as the decline in value of their stock, *cf. Kramer*, 546 A.2d at 353, and the losses suffered in their role as guarantors, *cf. Mid–State*, 877 F.2d at 1336–37. To the extent the Labo-

vitzes allege loss of management as an injury, the Fourth Circuit has made clear that "[t]he employment relation [is to] be characterized as a personal right as opposed to a business interest and is without the ambit" of the Virginia Conspiracy Act. *Buschi*, 775 F.2d at 1259 (internal quotation marks omitted).

The Virginia Supreme Court's subsequent decision in *Luckett v. Jennings*, 246 Va. 303, 435 S.E.2d 400 (1993), is consistent with this outcome. In *Luckett*, the court held that a shareholder-officer in the corporation "Quantum" had sufficiently alleged an injury to his business as a result of the conduct of several third parties. The plaintiff had not specifically alleged the nature of the injury to his business in the complaint, although elsewhere the complaint described him as a real estate developer. *Id.* at 402. The court concluded that "[w]hether Luckett has a business that is separate and distinct from Quantum, and whether he has sustained injury to that business distinguishable from injury to Quantum, are issues of fact to be resolved at trial."[15] *Id.* Unlike *Luckett*, the Labovitzes' complaint identifies their injuries by reference to their property interests "in DCI," rather than in other businesses. The district court therefore properly ruled that the Labovitzes cannot pursue their claims under the Virginia conspiracy statute.

### C.

██ On cross-appeal, the *Times* contends that the district court improperly excluded evidence relating to Peter Labovitz's failure to make mortgage payments owed to an outside lender, Burke & Herbert Bank, on behalf of DCI. The *Times* sought to introduce this evidence on the theory that any debt owed by the *Times* to Peter Labovitz should be "set off" in part by the amount of these payments. The district court rejected the evidence as ir-

---

**15.** The *Luckett* court did not reach the defendants' argument that other cases barred the plaintiff's claim because he suffered an investor- or employee-related injury rather than a business-related injury. *Id.* at 306, 435 S.E.2d 400.

relevant under Fed.R.Evid. 401, noting that the doctrine of mutuality barred the Times' theory, as the *Times* and DCI were "separate legal entities" and the *Times* could not rely on a debt Labovitz owed to DCI to set off a debt the *Times* might owe to him. *Labovitz v. Washington Times Corp.*, No. 95–138, at 5 (D.D.C. Sept.30, 1997). We find no abuse of discretion, *Chedick*, 151 F.3d at 1084, nor legal error, *FTC v. Texaco, Inc.*, 555 F.2d 862, 876 n. 29 (D.C.Cir.1977).

The *Times* contends on appeal that Peter Labovitz's failure to pay the outside lender forced DCI to make these payments in his stead, thereby creating a setoff against any injury he suffered from the *Times'* alleged failure to pay him $120,000 for relinquishing control of DCI. To demonstrate mutuality, the *Times* points to evidence such as a memorandum sent by John Hanes claiming that DCI paid Peter Labovitz certain mortgage payments that he failed to pass on to the Burke & Herbert Bank. At most, however, this evidence as well as the other documents and testimony identified by the *Times* only shows mutuality between DCI and Peter Labovitz, not between the *Times* and Labovitz. Attempting to link DCI with the *Times* by pointing to language in the complaint alleging that the *Times* acquired a fifty-percent ownership interest in DCI, the *Times* cites no authority for the proposition that a debt owed to a company is also owed individually to a shareholder. Indeed, the *Times'* contention is inconsistent with its position that only DCI, and not its shareholders, can pursue claims against third parties for injuries that DCI suffered directly.

For the first time on appeal, the *Times* makes two additional contentions, first, that mutuality is not required for equitable setoffs where courts forgo the strict requirement of mutuality "for a clear equity

or to prevent irremediable injustice," and second, that the excluded evidence would show that Peter Labovitz "knew that he was dealing with DCI when he made the alleged arrangement to receive" $120,000 in exchange "for withdrawing from DCI leadership activities," and that therefore the contract to surrender control of DCI was between Labovitz and DCI, not Labovitz and the *Times*.[16] Having failed to raise either contention in the district court, the *Times* is barred from doing so now. *See United States v. Baucum*, 66 F.3d 362, 363 (D.C.Cir.1995); *Kattan by Thomas, v. District of Columbia*, 995 F.2d 274, 278 (D.C.Cir.1993).

Accordingly, because counts one through four are derivative claims, and the Labovitzes do not have a cause of action under the Virginia conspiracy statute, and because exclusion of the mortgage payment evidence proffered by the *Times* was not an abuse of discretion, we affirm the district court's orders and the judgment.

---

**16.** The *Times* concedes that it "did not use the words 'impeachment evidence' in its proffer and opposition to the motion in limine" to exclude the setoff evidence, but maintains that the evidence, by its very nature, was impeach-

ment evidence. We disagree that the Times' impeachment contention clearly flows from the mutuality arguments it made in the district court, or that the district court necessarily would have understood its proffer as such.