*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 18-CV-1178 & 19-CV-490

CHARLES M. MARTIN, APPELLANT,

v.

SANTORINI CAPITAL, LLC, ET AL., APPELLEES.

Appeal from the Superior Court of the
District of Columbia
(CAB-5462-18)

(Hon. Elizabeth C. Wingo, Trial Judge)

(Submitted October 2, 2019                    Decided August 27, 2020)

Charles M. Martin, *pro se*.

*Roger C. Simmons* was on the brief for appellees Santorini Capital, LLC, Steven S. Snider, R. Michael Kuehn, Jeffrey Mertz, and William Leahy.

*Lindsay A. Thompson* and *Thomas F. Murphy* were on the brief for appellee Richard L. Sugarman.

Before BLACKBURNE-RIGSBY, *Chief Judge*, BECKWITH, *Associate Judge*, and RUIZ, *Senior Judge*.

BLACKBURNE-RIGSBY, *Chief Judge*: Appellant Charles M. Martin appeals the

trial court's dismissal of his complaint alleging various wrongdoings by Santorini

Capital, LLC ("Santorini"), its members Steven S. Snider and R. Michael Kuehn, its

employee Jeffrey B. Mertz, and its attorneys William F. Leahy and Richard L. Sugarman. For the most part, appellant's complaint alleged that appellees' wrongful actions caused harms to the ownership interests in several real properties, which were owned by several limited liability companies ("LLCs"). However, he named himself in his individual capacity as the plaintiff. Rule 17(a)(1) of the Superior Court Rules of Civil Procedure requires that actions "must be prosecuted in the name of the real party in interest." Although appellant owned and controlled the LLCs, corporate law recognizes that the LLCs own the real properties at issue, not appellant, and therefore they are the real parties in interest. Because appellant failed to prosecute these claims on behalf of the real parties in interest, i.e., the LLCs, and because appellant did not substitute those parties into the case within a reasonable time, we conclude that the trial court did not err in dismissing those causes of action to the extent that appellant's complaint alleged damages to the ownership interests in the real properties. The trial court erred, however, in dismissing his breach of contract claim to the extent that his claim alleged a direct harm to himself that was independent of any injury to any LLC's ownership interests. The trial court also properly dismissed appellant's intentional infliction of financial distress and defamation claims for failure to state a claim. In turn, the trial court also properly

dismissed *lis pendens* notices that appellant filed on the real properties at issue. We therefore affirm in part, reverse in part, and remand for further proceedings.[1]

## I.     Factual and Procedural History

Appellant's complaint makes the following allegations. Between November 2016 and March 2017, Santorini issued approximately nine loans to LLCs owned and controlled by appellant for the purposes of purchasing, renovating, and selling several pieces of real property that those LLCs owned.[2] Appellant guaranteed each of the loans in his individual capacity. The LLCs subsequently defaulted on the loans, and, in May 2018, Santorini – through counsel Sugarman – filed foreclosure notices on the relevant LLC-owned real properties. To prevent foreclosure and ensure loan repayment, the LLC-property owners, appellant, and Santorini entered into a Loan Modification Agreement on June 20, 2018 (the "Agreement"). Pursuant to the Agreement, the LLCs and appellant (as guarantor of the loans) agreed to repay

---

[1] We *sua sponte* consolidate appellant's separate appeal, No. 19-CV-490, which seeks reversal of the trial court's order denying his motion for a stay pending appeal, with this appeal considering the merits of the trial court's order dismissing his complaint. Because his arguments in favor of a stay in No. 19-CV-490 are identical to those raised herein, they are likewise decided for the same reasons discussed below. Consequently, his request for a stay pending appeal is now moot.

[2] All the LLCs are organized under the laws of the District of Columbia.

the loan balance of $2,900,000 to Santorini by October 30, 2018, and to pay $50,000 in interest to Santorini every month between August 1 and October 1, 2018. In addition, each LLC agreed to execute a deed in lieu of foreclosure in Santorini's name against the property under its control. Santorini, in turn, made additional promises to each LLC that were specific to its respective property, described in relevant part below. Appellant signed the Agreement in his personal capacity as the "Individual Guarantor" and on behalf of each LLC as its "Authorized Member."

The complaint further alleges that appellees breached the Agreement with respect to three LLC-owned real properties. First, Snider and Kuehn forced a tenant to leave one real property (owned by "CMSEP – 601 Atlantic St. SE, LLC"), which made it impossible for that LLC to sell the real property to that tenant and make specified modifications to the contract of sale, as provided for in the Agreement. Second, Santorini failed to reduce and amend an Indemnity Deed of Trust ("IDOT") on a second property (owned by "P3DC – 1668 Tamarack St. NW, LLC"), as required by the Agreement. Third, after appellant paid off the debt for a third property (owned by "CSFB – 5000 Marlboro Pike, LLC"), Santorini failed to issue a debt satisfaction letter, as required by the Agreement.

On August 1, 2018, appellant filed the complaint, naming himself in his individual capacity as plaintiff, against Santorini, Snider, Leahy, Kuehn, Mertz, and Sugarman. He alleged nine claims: breach of contract, i.e., the Agreement, against all appellees except Sugarman (Count 1); tortious interference with contract against appellees Kuehn and Snider for their actions affecting the property owned by "CMSEP – 601 Atlantic St. SE, LLC" (Count 2); wrongful foreclosure against all appellees based on foreclosure notices issued in May 2018 against all the properties (Count 3); fraud against all appellees arising out of an alleged scheme to obtain the real properties by making false representations in the Agreement (Count 4); fraudulent inducement against all appellees based on the transference of real property deeds in lieu of foreclosure (Count 5); unjust enrichment against all appellees for retaining the real properties (Count 6); conspiracy to commit fraud against all appellees (Count 7); intentional infliction of financial distress against all appellees (Count 8); and defamation against all appellees (Count 9). On August 10, 2018, appellant filed *lis pendens* notices on the real properties at issue.

On September 4, 2018, Leahy filed a motion to dismiss for failure to state a claim for relief under Super. Ct. Civ. R. 12(b)(6), specifically arguing that appellant lacked standing as to Counts 1 through 7. Sugarman filed a motion to dismiss on

September 5, 2018. On September 20, 2018, Santorini filed an Emergency Motion to Cancel and Release *Lis Pendens* Notices.

On November 1, 2018, the trial court issued an Omnibus Order granting the motions to dismiss filed by appellees Leahy and Sugarman, *sua sponte* dismissing the complaint as to the remaining defendants, and granting Santorini's motion to cancel and release the *lis pendens* notices. The court dismissed Counts 1 through 7 without prejudice as to all appellees, reasoning that appellant lacked standing to assert these claims in his individual capacity. The court noted that appellant's alleged injuries – monetary losses, deprivation of real properties, inability to use and invest real properties, and inability to direct funds and gains – "accrued in the first instances to the LLCs." Grounding its analysis in constitutional standing and corporate law, the court found that appellant's membership in or controlling interest in the LLCs or role as guarantor to the loans did not vest him with standing to assert claims in his individual capacity for harms directly sustained by the LLCs. The court then dismissed Count 8 with prejudice because intentional infliction of financial distress is not a viable cause of action under District of Columbia law, and dismissed Count 9 without prejudice for failure to state a claim because appellant's defamation claim failed to attribute any defamatory statement to any of the named defendants.

As a result of its dismissal of the complaint, the court granted Santorini's motion to release the *lis pendens* notices.  This appeal followed.

## II.    Legal Framework

Rule 17(a)(1) of the Superior Court Rules of Civil Procedure requires that an action be "prosecuted in the name of the real party in interest."  *Varnum Props., LLC v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 204 A.3d 117, 121 (D.C. 2019) (quoting Super. Ct. Civ. R. 17(a)(1)).  The "real party in interest" is the person or entity "holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery."  *Id.* (quoting *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 362 (5th Cir. 2014)).  Substantive law determines whether a party holds the right to be enforced.  *Id.* at 121-22.  Rule 17(a)(3) prohibits dismissal of a complaint based on a failure to prosecute an action in the name of the real party in interest, however, "until a reasonable time has been allowed for substitution of that party."  *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 473 (D.C. 2008) (citation omitted).  When property belongs to a corporation and harms are alleged to the ownership interests in that corporation's property, generally the corporation is the real party in interest that must prosecute an action seeking to redress claims based on those harms because the

corporation possesses the actionable right that may be sued upon. *See id.* at 470-72; *Varnum Props.*, 204 A.3d at 122.[3]

Rule 17's real-party-in-interest requirement is "essentially a codification of th[e] nonconstitutional, prudential limitation on standing." *Varnum Props.*, 204 A.3d at 121 n.7 (quoting *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008)). In every case, this court applies the constitutional limitation on standing – requiring that a plaintiff plead a "case or controversy" – as well as any applicable prudential limitations on standing. *Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201, 1206 (D.C. 2002). Prudential concerns impose judicially created limits on standing aside from those imposed by the Constitution, including among others "the general prohibition on a litigant's raising another person's legal rights." *Grayson v. AT & T Corp.*, 15 A.3d 219, 233-35 (D.C. 2011) (en banc) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Pursuant to this prudential limit, this court will generally restrict cases to those in which the plaintiff is the real party in interest, i.e., "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

---

[3] Because Rule 17 "is similar to its federal counterpart," this court looks to cases interpreting the federal rule for guidance. *Varnum Props.*, 204 A.3d at 121.

parties." *Consumer Fed'n of Am. v. Upjohn Co.*, 346 A.2d 725, 727 (D.C. 1975) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).[4]

In *Estate of Raleigh*, this court held that a majority or sole shareholder is prohibited from suing individually to redress wrongs associated with real property owned by a corporate entity because, under corporate law, "title to the corporate property is vested in the corporation and not in the owner of its stock." 947 A.2d at 470-73. Rather, Rule 17 requires the real party in interest, i.e., the corporate entity, to sue on its own behalf, and a complaint filed by the shareholder was properly dismissed. *Id.* There, an estate sued a corporate entity and others to quiet title of certain real property. *Id.* at 468. While the real property was recorded and titled in the name of the corporate entity (in which the decedent had been a majority shareholder), the estate of the decedent argued that the decedent, in fact, owned the property. *Id.* at 468, 471. The court concluded that, under applicable corporate law principles, the estate had "no legal right to the individual assets owned by the corporation merely because its decedent was a shareholder or even the sole

---

[4] There are exceptions, such as where applicable legislation is clear that the statutorily-created right extends to the limits of constitutional standing and "courts 'lack the authority to create prudential barriers to standing.'" *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 731 (D.C. 2000) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982)).

shareholder." *Id.* at 470.  Because corporate property "is vested in the corporation and not its individual shareholders," "[t]he authority to sue to redress the alleged wrongs related to [conduct concerning the corporate property] also belongs to the corporation, not to the individual shareholder."[5] *Id.* (citation omitted).  "[T]he estate had no legal interest in the real property belonging to the corporation" and therefore "could not sue individually to redress any alleged wrongs against the corporation's property interests."[6] *Id.*  Rule 17 permits substitution of the corporate entity for the individual shareholder within "a reasonable time." *Id.* at 472-73.  Noting that the estate was on notice of the real-party-in-interest issue for at least twenty-nine months without substituting the corporate entity as plaintiff, this court found no error in the trial court's decision to deny the estate's motion to substitute, which the estate filed only after the trial court had granted summary judgment against it.  *Id.* at 472-73.

---

[5] This rule avoids multiple suits, safeguards the corporation's right of action, and ensures that any recovered damages are available to the corporation's creditors and any other shareholders. *Estate of Raleigh*, 947 A.2d at 469.

[6] An exception is a derivative action, which allows a shareholder "to enforce a *corporate* cause of action against officers, directors, and third parties" on behalf of the corporation, as long certain procedural rules are followed. *See Estate of Raleigh*, 947 A.2d at 470 n.6.  No such derivative claim is pled here.

The rules governing corporations as articulated in *Estate of Raleigh* are similarly applicable to LLCs because an LLC, like a traditional corporation, "is an entity distinct from its member or members." D.C. Code § 29-801.04(a) (2013 Repl.) ("Nature, purpose, and duration of limited liability company").[7] Thus, LLC members, like corporate shareholders, own an interest in an LLC; they are not the LLC nor do they own an LLC's property. *Cf. Wallasey Tenants Ass'n, Inc. v. Varner*, 892 A.2d 1135, 1141 n.3 (D.C. 2005) (describing LLC and its sole member as "two separate legal entities"). And, like corporate shareholders, LLC members are prohibited from initiating actions to enforce the rights of the corporation, with some exceptions. Under § 29-808.01 (2013 Repl.), an LLC member may bring a "direct action" against another member, a manager, or the LLC "to enforce the member's rights and otherwise protect the member's interests" only so long as the member's injury is "not solely the result of an injury suffered or threatened to be suffered by the [LLC]." LLC members may also bring derivative actions "to enforce the rights of a limited liability company" in certain circumstances and according to certain procedures. *Id.* §§ 29-808.02 to -808.06 (2013 Repl.); see also *supra* note 6.

---

[7] In 2010, the Council of the District of Columbia enacted the Uniform Limited Liability Company Act of 2010. *See* D.C. Law 18-378, 58 D.C. Reg 1720-2186 (Feb. 27, 2011), *codified at* D.C. Code §§ 29-801.01 to 29-810.01 (effective July 2, 2011).

A guarantor of a corporate loan stands in no different a position than a shareholder (or LLC member), creditor, or lessor and therefore is not a real party in interest that can prosecute a claim on behalf of a corporation or LLC. *See Labovitz v. Wash. Times Corp.*, 172 F.3d 897, 902 (D.C. Cir. 1999). A guarantor is a contingent creditor, and creditors, like a corporate shareholder, cannot recover directly for an injury to a corporation. *See id.* at 901-02 (discussing *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi.*, 877 F.2d 133, 1336-37 (7th Cir. 1989)). In *Labovitz*, two owner-shareholders of DCI Publishing, Inc. ("DCI"), who together owned half the company, sued Washington Times Corp. when it attempted to acquire DCI at a distressed price. *Id.* at 898. The shareholders alleged that the Times' "dealings with them and DCI substantially reduced the value of their interests in DCI" and "triggered their personal guarantees of loans to DCI." *Id.* at 898. The federal appellate court noted that the issue presented was "who is the real party in interest to bring a lawsuit under the governing substantive law to enforce the asserted right." *Id.* at 900 n.6 (citing Fed. R. Civ. P. 17(a) and quoting *Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992)). It concluded that, under governing Delaware law, corporate shareholders can bring an individual claim only "if they suffer injuries directly or independently of the corporation" and they are able to "allege a special injury to themselves, apart from that suffered by the corporation." *Id.* at 900-01 (citation and internal quotations omitted). The court held that a personal guarantor

is sufficiently similar to a creditor of a corporation in that, without a showing of a special injury, the guarantor lacks standing to pursue damages suffered by the corporation. *Id.* at 898, 902. Therefore, a guarantor is not the real party in interest when it sues a third party whose alleged wrongdoing damaged the corporation, as the harm the guarantor suffers is derivative, rather than direct. *Id.* Similarly, a shareholder-guarantor is not the real party in interest when he or she sues a third party whose wrongdoing to the corporation triggers his or her guarantee and thereby causes an injury to the shareholder-guarantor. *Id.*

However, a member of an LLC, like a shareholder, "with a direct, personal interest in a cause of action [may] bring suit even if the corporation's rights are also implicated." *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990). To sue directly, an individual "must identify a legal interest that has been directly or independently harmed, i.e., a 'special injury' that does not derive from the injury to the corporation." *Harpole Architects, P.C. v. Barlow*, 668 F. Supp. 2d 68, 77 (D.D.C. 2009) (applying D.C. law). A shareholder's economic damage resulting from losses to the corporation is not a direct or independent harm giving rise to shareholder standing. *See id.* at 77-78; *Cheeks v. Fort Myer Constr. Co.*, 722 F. Supp. 2d 93, 109 (D.D.C. 2010).

### III.    Standard of Review

A plaintiff's violation of Rule 17 can be raised by a defendant in a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted. *Whelan*, 953 F.2d at 672.[8] We review a dismissal for failure to state a claim under Rule 12(b)(6) de novo. *See Grayson*, 15 A.3d at 228. We accept the allegations in the complaint as true, and we construe all facts and inferences in favor of the plaintiff. *Id.* We may dismiss for failure to state a claim where the complaint fails to allege the elements of a legally viable claim or defense. *Id.* at 250.

### IV.    Analysis

---

[8] A Rule 17 defense, however, "may *not* be raised at any time, for the real party must have the opportunity to step into the 'unreal' party's shoes and should not be prejudiced by undue delay." *Whelan*, 953 F.2d at 672. Thus, it would be an abuse of discretion for the trial court to allow a Rule 17(a) defense "as late as the start of trial if the real party has been prejudiced by the defendant's laxness." *Id.* Failure to timely raise a Rule 17 defense can result in waiver of that defense. *Id.*

In most part, we find no error in the trial court's dismissal of the complaint pursuant to Rule 12(b)(6) for failure to state a claim.[9] However, we reverse the trial court's ruling on appellant's claim for breach of contract against Santorini, finding that his complaint alleges a direct and independent harm for which he has standing to pursue a claim for damages.

### A.     Affirming Dismissal of Count 1, in part, and of Counts 2 to 7

The trial court dismissed Counts 1 through 7 for lack of constitutional standing. We affirm that dismissal, in part, though on different grounds. *See Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997) ("[W]e are not limited to reviewing the legal adequacy of the grounds the trial court relied on for its ruling; if there is an alternative basis that dictates the same result, a correct judgment must be affirmed on appeal.").[10] Because Count 1, in part, and Counts 2

---

[9] We reject Santorini's argument that the trial court's order of dismissal is not appealable because the dismissal was without prejudice as to several counts. To the contrary, "the dismissal of a complaint, even without prejudice, is a final order" and therefore "falls within the scope of our appellate jurisdiction." *Perry v. District of Columbia*, 474 A.2d 824, 825 (D.C. 1984) (citations omitted).

[10] When LLC members or corporate shareholders assert an actual injury to themselves, even if indirect, caused by a defendant that is likely to be redressed by a favorable decision, they satisfy the minimum requirements of constitutional standing. *See, e.g.*, *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008).

through 7 seek to redress alleged harms to the interests of the LLCs (as property owners), the LLCs are the real parties in interest and must prosecute these claims in their own name. Appellant's failure to substitute the LLCs as plaintiffs, despite adequate notice and reasonable time to do so, and the fact that this appears to be an intentional decision, given his post-dismissal arguments to the trial court and arguments on appeal that he is the proper plaintiff, violates Rule 17's requirement that actions "must be prosecuted in the name of the real party in interest." Thus, we affirm dismissal of Counts 1 through 7 to the extent that they seek to address the LLC's rights under the Agreement or to claim damages related to the LLCs' ownership interests in the real properties.

Appellant's main argument on appeal – that he can prosecute these claims because he signed the Agreement in his individual capacity – ignores the allegations in the complaint that assert harms that flow to the LLC-property owners, and not to him directly.[11] Whether in his role as guarantor of Santorini's loans, or as a member of each LLC-property owner, or as a signatory to the Agreement, appellant lacks a

---

[11] Appellant signed the Agreement in two capacities: in his individual capacity as the "Individual Guarantor" and on behalf of each LLC as its "Authorized Member." What is significant is not that he signed the Agreement, but that rights accrue under the Agreement both to him as the Individual Guarantor and to the LLCs as property owners. He can sue to enforce the former, see *infra* Section IV(B), but not the latter.

legal interest in the ownership rights in the real properties, which are owned by the LLCs. As he is not the real party in interest, he therefore cannot prosecute claims to redress harms that belong to the LLCs. *See Estate of Raleigh*, 947 A.2d at 470; *Labovitz*, 172 F.3d at 902.

In his complaint for breach of contract (Count 1), appellant alleges the following harms:

> 41. As a direct and proximate result of the Defendant's Breach of Contract, the Plaintiff has been injured in damages, monetary losses, deprived of its real properties. In addition, the Plaintiff is entitled to compensation, including but not limited to a recovery of its documented monetary expenditures, a vacating of the Deeds-In-Lieu of Foreclosure, the Deeds to each of his properties, compensation for capital losses, and for the personal injuries resulting from the Defendant's actions.
>
> 42. As a further direct, proximate, reasonably foreseeable consequence of the Defendant's actions, the Plaintiff has sustained an inability to use, enjoy, invest, develop his real properties, and direct his funds, gains, and potential gains causing the Plaintiff extreme inconvenience, monetary losses, the inability to devote his time to his professional duties, has been deprived of his real properties, and has at the hands of the Defendants, experienced a diminished enjoyment of his money and real properties.

Appellant's complaint mirrors these paragraphs at the end of each of Counts 2 through 7. All of the harms articulated in the complaint that are associated with the

ownership interests in the real properties – monetary losses; deprivation of real properties; inability to use, enjoy, invest, and develop real properties; and inability to direct funds, gains, and potential gains – would be incurred by the LLC-owners of those real properties. Although appellant attempts to characterize these harms as personal – for instance, by alleging that "*Plaintiff* has sustained an inability to use, enjoy, invest, [and] develop *his* real properties" – they are, in fact, harms that flow first to the LLCs as property owners. His harms are derivative, because these harms flow to him as owner of the LLCs and guarantor of their debt obligations.

Specifically, Count 1 for breach of contract alleges that appellees breached the Agreement by failing to fulfill contractual obligations to the LLCs concerning property owned by them by (1) failing to reduce and amend the IDOT for the property owned by "P3DC – 1668 Tamarack St. NW, LLC," and (2) forcing a tenant to leave one real property, thereby prohibiting its LLC-owner ("CMSEP – 601 Atlantic St. SE, LLC") from selling it.[12] Count 2 for tortious interference with contract is premised on actions by Snider and Kuehn affecting the rights of the LLC

---

[12] Because appellant is a party to the Agreement in his role as guarantor of the LLC's loans, see *supra* note 11, he is entitled to allege contractual claims against other Agreement signatories so long as he can claim a direct or independent harm caused by breach of the contract that is independent of the injury to the LLC whose debt he guaranteed. See *infra* Section IV(B).

"CMSEP – 601 Atlantic St. SE, LLC" to sell its property.[13]   Counts 3, 5, and 6 concern appellees' alleged actions that affected the property rights of the LLCs, i.e., filing wrongful foreclosure notices on the LLC-owned real properties, fraudulently inducing the execution of deeds in lieu of foreclosure of those properties, and unjustly retaining them.   Counts 4 and 7, appellant's allegations of fraud and conspiracy to commit fraud, are premised on appellees' acquisition of the LLC-owned real properties.   As to all of these allegations, any harms to ownership interests in the real properties must be prosecuted by the real parties in interest, i.e., the LLCs.

Appellant failed to substitute the LLCs as plaintiffs for these claims, despite having a reasonable amount of time to do so.   We have recognized thirty days as a reasonable period.  *See, e.g.*, *Varnum Props.*, 204 A.3d at 122; *Duckett v. District of Columbia*, 654 A.2d 1288, 1290-91 (D.C. 1995) (per curiam).   Here, appellant had almost two months – between appellee Leahy's September 4, 2018, motion first

---

[13]   In his brief, appellant argues that his tortious interference claim is also premised on appellees' interference with *his* contract with the tenant of 601 Atlantic Ave. for the sale of that property.  The complaint does not allege that *appellant* had a contract with the tenant, but rather it alleges that the LLC had such a contract.  Therefore, because appellant did not allege this fact in the complaint, we do not consider it on appeal.  *See Grayson*, 15 A.3d at 228-29 (noting that the "only issue on review of a dismissal made pursuant to Rule 12(b)(6) is the legal sufficiency of the complaint").

identifying the issue of standing and the trial court's November 1 Omnibus Order – to substitute the LLC-property owners, but he failed to do so. Rather, on appeal, appellant doubles down on his decision to prosecute these claims in his individual capacity, arguing that he is entitled to assert these claims as a signatory to the Agreement. We therefore conclude that dismissal here satisfied the requirements of Rule 17.

In sum, because appellant is not the real party in interest with respect to any injury to the ownership interests in the real properties and because he failed to timely substitute the LLC property owners as plaintiffs, we affirm the trial court's dismissal of Counts 1 through 7 without prejudice to the extent that those claims allege damages to the ownership interests in the real properties.[14]

## B.    Reversing, in part, Dismissal of Count 1

Because appellant signed the Agreement in his role as guarantor of the LLC's loans, he may allege a claim for breach of contract against other Agreement signatories so long as he can claim a breach arising from (1) an obligation between

---

[14]    We acknowledge that the dismissal was without prejudice and that a complaint may be filed on behalf of the LLCs asserting these same claims.

himself as Individual Guarantor and any signatories, as expressed in the Agreement, or (2) direct or independent harms that are independent of the injuries to the LLCs whose debt he guaranteed. Because the complaint alleged such harms, we must reverse in part and remand as to Count 1 as alleged against Santorini.[15] We affirm dismissal of Count 1 as to appellees Snider, Kuehn, Mertz, and Leahy because they were not parties to the contract. *See Charlton v. Mond*, 987 A.2d 436, 441 (D.C. 2010) ("Non-parties [to a contract] owe no contractual duty to the contracting parties.").

First, appellant's claim for breach of contract (Count 1) includes an allegation that Santorini breached the Agreement by failing to issue him a debt satisfaction letter, an obligation arising from his role as Individual Guarantor. Article 4(e) of the Agreement states that, "[u]pon payment in full of all obligations owed," Santorini "agrees to issue letters stating that such person or entity paid the loan satisfactorily." The complaint alleges that appellant "caused the loan [owed by CSFB – 5000 Marlboro Pike, LLC] to be paid off via bank wire," but that, as of filing the complaint, "Santorini has failed to issue the required letter." Because the Agreement

---

[15] Santorini filed a motion to dismiss for insufficient service, which the trial court denied as moot given its Omnibus Order dismissing the complaint in its entirety. Therefore, on remand, the trial court must reconsider Santorini's motion, along with appellant's related filings, and conduct further proceedings as necessary.

obligated Santorini to issue a debt satisfaction letter to appellant, and because it allegedly failed to do so, appellant has pled a claim for relief for breach of contract against Santorini.

Second, we reverse the dismissal of the breach of contract claim to the extent that appellant's complaint alleges direct harms or harms independent from those that accrued to the LLCs whose debt he guaranteed. *See Jackson v. George*, 146 A.3d 405, 415 n.6 (D.C. 2016) (noting plaintiffs "'alleg[ing] a 'special injury' to themselves apart from that suffered by the corporation'" as an "exception to the requirement that suits alleging wrongs against a corporation be brought derivatively" (quoting *Labovitz*, 172 F.3d at 901)); *Harpole*, 668 F. Supp. 2d at 77 (acknowledging that, for injuries to be recoverable, a complaint must allege "a 'special injury' that does not derive from the injury to the corporation").

In *Harpole*, a corporation and its sole shareholder sued a former employee on several claims related to the employee's conduct that defrauded the corporation. 668 F. Supp. 2d at 77. The plaintiff-shareholder claimed damages in the form of "emotional distress damages" and "lost personal income as a result of defendant's fraud and the subsequent investigation" of the former employee's conduct. *Id.* at 76. The federal district court dismissed the claims raised by the shareholder to the extent

that his claims were "based on 'emotional distress' deriving from 'economic damages . . . suffered by the corporation.'" *Id.* at 77 (quoting *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1072 (1st Cir. 2002)). The plaintiff's "emotional distress [was] derive[d] from the harm to [the corporation] and cannot provide standing." *Id.* However, the court determined that the plaintiff had standing "to the extent that [he] suffered direct harm as a result of losses of money and property in his individual capacity," e.g., to the extent that he "took no salary during certain pay periods" as a result of the defendant's conduct. *Id.* at 77-78.

Here, appellant's complaint alleges three ways in which Santorini breached the contract – concerning the IDOT for Tamarack St. NW, the sale of 601 Atlantic St. SE, and the debt satisfaction letter for 5000 Marlboro Pike. As a result of that conduct, he alleges direct harms, independent of those to the LLCs: "documented monetary expenditures" and "personal injuries" in Paragraph 41, and "diminished enjoyment of his money" in Paragraph 42. Because these alleged injuries are direct to appellant and not necessarily dependent on harms to the LLCs, appellant has standing to assert a claim for breach of contract against Santorini, and that claim survives a motion to dismiss pursuant to Rule 12(b)(6).

Appellant, however, lacks standing in his personal capacity to allege injuries that derive from harms suffered by the LLCs or economic damages incurred as a result of his role as a member of each LLC. *See Cheeks v. Fort Myer Constr. Co.*, 722 F. Supp. 2d 93, 109 (D.D.C. 2010); *Harpole*, 668 F. Supp. 2d at 77. The damages alleged in Paragraphs 41 and 42 that were not identified above fall into this category. For example, appellant cannot claim damages for the "extreme inconvenience, monetary losses, [] inability to devote his time to his professional duties, [and depriv]ation of his real properties" as alleged in Paragraph 42 because he alleges that those injuries were "caus[ed]" by the loss of the ability to "use, enjoy, invest, [and] develop . . . real properties, and direct [] funds, gains, and potential gains," all of which are injuries incurred by the LLCs. *See Harpole*, 668 F. Supp. 2d at 77 (ruling that "emotional distress derive[d] from the harm to [the corporation] . . . cannot provide standing"). Thus, these allegations in Paragraph 42 do not reflect harms that are direct to appellant or harms independent of those incurred to the LLCs.

Thus, we reverse the dismissal of appellant's breach of contract claim against Santorini to the extent that he has alleged a breach of Article 4(e) of the Agreement, as well as damages from Santorini's breaches that are direct and independent from any damages to the LLC-property owners.

## C.    Affirming Dismissal of Counts 8 and 9

As the trial court recognized, intentional infliction of financial distress is not a cognizable claim in the District of Columbia.  To survive a motion to dismiss for failure to state a claim, a complaint must contain *factual allegations* sufficient to state a claim, but it need not precisely set out the legal theory on pain of dismissal "for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).  In the District of Columbia, intentional infliction of emotional distress is a recognized claim.  *See Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1260 (D.C. 2018).  Extreme financial hardship may cause emotional distress.  However, the allegations in appellant's complaint are clearly insufficient to allege the elements of such a claim to the required degree of "extreme and outrageous conduct" and "severe emotional distress," *id.*, and, for that reason, Count 8 failed to state a cause of action and was properly dismissed.

Appellant also failed to state a claim for defamation (Count 9) because he did not identify any *statement* attributed (or that can be construed as being attributed) to appellees that was "false and defamatory."  *Beeton v. District of Columbia*, 779 A.2d

918, 923 (D.C. 2001).[16]  Instead, appellant alleges that the "evidence and the Exhibits *will show* that . . . Defendants have defamed the Plaintiff."  A vague and conclusory assertion of what future evidence may prove does not meet the pleading standards required to survive a Rule 12(b)(6) motion.  *See Logan v. LaSalle Bank Nat. Ass'n*, 80 A.3d 1014, 1019 (D.C. 2013) ("Bare allegations of wrongdoing that are no more than conclusions are not entitled to the assumption of truth, and are insufficient to sustain a complaint." (citations and quotations omitted)).

## V.    *Lis Pendens*

The trial court properly granted Santorini's emergency motion to release the *lis pendens* notices.  A *lis pendens* notice is designed to enable interested third parties to discover the existence and scope of pending litigation affecting the title to real property or asserting a mortgage, lien, security interest, or other interest in real property.  *See Heck v. Adamson*, 941 A.2d 1028, 1029-30 (D.C. 2008); *see also* D.C. Code § 42-1207 (2020 Repl.) ("Notice of pendency of action (*lis pendens*)").  The

---

[16] To bring a claim for defamation, a plaintiff must show that:  (1) the defendant made a false and defamatory statement concerning plaintiff, (2) the defendant published the statement without privilege to a third party, (3) the defendant's fault in publishing the statement amounted to at least negligence, and (4) either the statement is actionable as a matter of law irrespective of special harm or the statement's publication caused the plaintiff special harm.  *See Beeton*, 779 A.2d at 923.

trial court found that dismissal of appellant's complaint was a sufficient basis upon which to cancel the *lis pendens* notices. The trial court's decision comported with § 42-1207(d)(1), which provides that the court "shall order the cancellation and release" of *lis pendens* notices once "judgment is rendered in the action or proceeding against the party who filed" them. *See also McNair Builders, Inc. v. 1629 16th St., LLC*, 968 A.2d 505, 508 (D.C. 2009) (noting that, once there was no pending trial court action affecting an interest in real property, "cancellation of the *lis pendens* was necessary").

We affirm dismissal of the complaint to the extent that it involves the ownership interests of the LLCs; appellant may only advance a claim that alleges direct and independent harms. Therefore, this case is no longer "an action or proceeding . . . affecting the title to or tenancy interest in . . . real property." D.C. Code § 42-1207(a). Because we conclude that the trial court properly dismissed the complaint as to those claims affecting real property, we conclude that it also correctly granted Santorini's motion to cancel and release the *lis pendens* notices.

## VI.    Conclusion

Accordingly, the trial court's dismissal of Counts 2 through 9 is affirmed.  We reverse the dismissal of Count 1 only against Santorini to the extent that the complaint alleges a breach of the Agreement as to Article 4(e) and alleges direct or independent harms arising from Santorini's breaches, and remand to the trial court for further disposition.

*So ordered.*